UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| IN RE; SUBPOENA DIRECTED TO SAFECO INSURANCE COMPANY OF AMERICA, | ) ) ) | NO. CV-05-396-CI |
| | ) | ORDER GRANTING SAFECO'S MOTION TO QUASH AND DENYING MOTION FOR PROTECTIVE ORDER |
| [NOTWEN CORPORATION, WCH/GAN PARTNERS, LTD., and WILLIAM C. NEWTON, Plaintiffs, v. AMERICAN ECONOMY INSURANCE CO., Defendant, Cause No. 05-CV-104J, District of Wyoming] | ) ) ) ) ) ) ) | |

BEFORE THE COURT are third-party Safeco's Motions to Quash subpoena and for Protective Order, submitted to the court following oral argument on December 7, 2005. (Ct. Rec. 1.)  Wyoming attorney Timothy J. Bommer appeared *pro hac vice* for third-party Safeco; Wyoming attorney George E. Powers, Jr., of Sundahl, Powers, Kapp & Martin, appeared *pro hac vice,* with local counsel William J. Schroeder, of Paine, Hamblin, Coffin, Brooke & Miller, LLP, for Plaintiffs.

The matter is before the undersigned by operation of LMR 1(9), Local Rules for the Eastern District of Washington.  The parties, in compliance with LR 37.1(b), Local Rules for the Eastern District of Washington, have conferred and attempted to settle this matter without court intervention.  (Ct. Rec. 4 at 7-8.)  All future filings in this matter shall reflect **Cause No. CV-05-396-CI.**

**THE OREGON LITIGATION**

Plaintiffs, investors in an Oregon company, were sued in the Circuit Court of the State of Oregon, County of Multnomah, *Lezak v. Expand Cellular, Inc., et al.,* referenced by Plaintiffs as the *Lezak* litigation. In response to claims made in that litigation, Plaintiffs sought insurance coverage under two policies: a personal homeowners policy issued by Safeco on William Newton's personal residence in Jackson, Wyoming, Policy No. OM552051, and a commercial policy issued by American Economy Insurance Company (AEIC), insuring Mr. Newton's business interests, policy number 02BO904634. Safeco and AEIC are subsidiaries of the same parent company. Both companies denied coverage. The Oregon case was litigated during the spring of 2005. Counsel represented during oral argument that Plaintiffs were exonerated of all claims against them after trial in March and April 2005.

**THE WYOMING LITIGATION**

In response to denial of coverage by AEIC, Plaintiffs filed breach of contract / bad faith claims against AEIC[1]; Safeco was not included as a party and Plaintiffs continue to represent they do not intend to file a claim against Safeco. The suit initially was filed in state court and removed by AEIC to the United States District Court for the District of Wyoming.

On September 27, 2005, Plaintiffs issued an amended subpoena from the United States District Court for the Eastern District of

---

[1]*Notwen Corporation, WCH/GAN Partners, LTD. and William C. Newton,* Plaintiffs v. *American Economy Insurance Co.,* Defendant, Cause No. 05-CV-104J, District of Wyoming.

ORDER GRANTING SAFECO'S MOTION TO QUASH
AND DENYING MOTION FOR PROTECTIVE ORDER - 2

1   Washington, directing Safeco employee, Neil Jacot, to appear for
2   deposition with the entire Safeco homeowner's claim file. (Ct. Rec.
3   8.) Plaintiffs contend the rationale behind the decision to deny
4   coverage under the homeowner's policy is relevant to AEIC's decision
5   to deny coverage and a defense under its separately issued
6   commercial policy.

7       Plaintiffs advised the court during oral argument that the
8   discovery cut-off for the Wyoming litigation has passed (the
9   Subpoena was issued prior to the cut-off date), but that counsel
10  involved reached an informal agreement that should this court permit
11  access to the Safeco claim file, no objection would be raised as to
12  untimeliness.   It appears the issue of extension of the discovery
13  cut-off has not been presented to the federal trial court.

14                          **LEGAL ISSUES**

15      Safeco asserts it is entitled to an order quashing the subpoena
16  and/or protective order because the claim file (1) is not relevant
17  to the denial of coverage under the commercial policy issued by
18  AEIC; (2) includes documents protected under attorney/client
19  privilege; and (3) includes documents protected under work product
20  doctrine.   Plaintiffs respond the claim file is relevant because
21  Safeco and AEIC are subsidiaries of the same parent company, share
22  office space, access to each other's claim files, policies, and
23  procedures.   Thus, Plaintiffs contend Safeco's interpretation of
24  policy language in the homeowner's policy is relevant to the
25  allegations against AEIC with respect to the commercial policy.

26                         **AEIC'S POSITION**

27      AEIC sets forth their position as to coverage in a letter dated
28

ORDER GRANTING SAFECO'S MOTION TO QUASH
AND DENYING MOTION FOR PROTECTIVE ORDER - 3

August 17, 2004.  (Ct. Rec. 15, Ex. B.)  After a review of the claims in *Lezak* lawsuit, AEIC denied coverage noting the claims involved misappropriation of trade secrets, tortious interference, and conversion, and the facilitation of same by corporate board members and investors including Plaintiffs.  Under the terms of the AEIC commercial policy, a covered business liability includes any "occurrence" for which there is bodily injury or property damage.  Occurrence is defined as an accident.  AEIC, referencing Wyoming law, *Reisig v. Union Insurance Company*, 870 P.2d 1066 (Wyo. 1994), concluded claims involving civil conversion and/or misappropriation were not "accidents" that would trigger an occurrence.  (Ct. Rec. 15, Ex. B at 2, Hormel letter.)  Additionally, there were coverage exclusions in the policy excluding coverage for intentional acts.  Finally, AEIC denied coverage on grounds they were not promptly notified of the lawsuit.

**SAFECO'S POSITION**

Safeco, in a letter dated September 1, 2004, denied coverage on grounds there was no bodily injury or property damage caused by an "occurrence" as alleged in the Complaint and as those terms were defined in the homeowner's policy.  (Ct. Rec. 15, Ex. D at 2, Jacot letter.)  Additionally, Mr. Jacot noted "it is questionable whether damages alleged were caused by an 'occurrence'" as defined in the policy.  Occurrence is defined as an "accident."  Mr. Jacot then stated:

> Further, it is questionable whether the alleged damages were caused by an accident.  It is my understanding that the Wyoming Supreme Court discussed the definition of "accident" in the case of *Matlock v. Mountain West Farm Bureau*, 44 P.3d 73 (Wyo. 2002).  Under that recent decision, there does not appear to be an accident that

1  gives rise to coverage for the intentional torts alleged.
2  **However, we recognize your argument that in some jurisdictions an accident refers to whether the damages were intended.** We, therefore, do not base our coverage
3  decision solely on whether or not an accident occurred.

4  (Ct. Rec. 15, Ex. D at 3.) (Emphasis added.)  It is the emphasized

5  language which Plaintiffs contend they have a right to explore

6  through deposition of Mr. Jacot and review of the claims file.  They

7  contend this interpretation is contrary to the interpretation

8  provided by AEIC, creating sufficient ambiguity in the definition of

9  the terms in the AEIC policy to give rise to AEIC's obligation to

10 defend.   Additionally, it is argued, the deposition of Mr. Jacot

11 should go forward because it may produce relevant evidence of bad

12 faith and/or breach of contract.   Specifically, Plaintiffs argued

13 they intended to secure evidence that, under Mr. Jacot's analysis,

14 an argument could be made Safeco would have recommended tendering a

15 defense because of doubt as to whether the claims constituted an

16 occurrence, but for the absence of property damage.  (Ct. Rec. 15,

17 Ex. D at 2.)

18                        **DISCOVERY**

19      Under Rule 26, FED. R. CIV. P., parties to litigation may

20 discover all relevant, non-privileged information.  *See United*

21 *States v. Nixon*, 418 U.S. 683, 699-700 (1974).  Pursuant to FED. R.

22 CIV. P. 45(c)(1) and 35 U.S.C. § 24, ancillary jurisdiction resides

23 in this court to enforce subpoenas directed to residents in this

24 district and issued by the District Court for the Eastern District

25 of Washington.  *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir.

26 1998).

27      District courts addressing such motions must decide whether the

28

ORDER GRANTING SAFECO'S MOTION TO QUASH
AND DENYING MOTION FOR PROTECTIVE ORDER - 5

testimony or material sought is "relevant to the claim or defense" of any party; additionally, for "[g]ood cause shown, the court may order discovery of any matter relevant to the subject matter involved in the action" if it would be "reasonably calculated to lead to . . . admissible evidence." FED. R. CIV. P. 26(b)(1), as amended April 17, 2000, effective December 1, 2000; *see also Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 967 (9th Cir. 2004). However, issues involving the admissibility of evidence must be directed to the court where the underlying action is pending, in this case, the Wyoming court.    "[A] district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be 'especially hesitant to pass judgment on what constitutes relevant evidence thereunder'.    Where relevance is in doubt . . . the court should be permissive." *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987) (citation omitted); *Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 335 (N.D. Cal. 1995).

## BREACH OF CONTRACT CLAIM

The underlying cause of action for breach of contract is being litigated in Federal District Court for the District of Wyoming. Under federal law, issues of insurance contract interpretation are governed by state law.    *Stanford Univ. Hosp. v. Federal Ins. Co.*, 174 F.3d 1077, 1083 (9th Cir. 1999).    Thus, this court looks first to Wyoming law governing insurance contract interpretation.

Review of the breach of contract claim against AEIC requires the court to interpret the AEIC policy under the usual rules of

contract interpretation. *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1023 (Wyo. 1993). As set forth in *Arnold v. Mountain West Farm Bureau Mut. Ins. Co., Inc.*, 707 P.2d 161, 166 (Wyo. 1985):

> If a contract is clear on its face, we must assume it reflects the intent of the parties. *Schacht v. First Wyoming Bank, N.A.-Rawlins, Wyo.*, 620 P.2d 561 (1980). We are not free to rewrite contracts under the guise of interpretation. *Adobe Oil & Gas Corp. v. Getter Trucking, Inc.*, Wyo., 676 P.2d 560 (1984). So long as there is no ambiguity, we are bound to apply the contract as it is written. *Rouse v. Munroe*, 658 P.2d 74 (Wyo. 1983).

See also *Farmers Ins. Exchange v. Dahlheimer*, 3 P.3d 820, 821-822 (Wyo. 2000). If the contract is "clear and unambiguous," inquiry is limited to the four corners of the document. *Principal Life Insurance Company v. Summit Well Service, Inc.*, 57 P.3d 1257, 1261 (Wyo. 2002); *Evans v. Farmers Insurance Exchange*, 34 P.3d 284, 285 (Wyo. 2001); *In re Sierra Trading Post, Inc. v. Hinson*, 996 P.2d 1144, 1148 (Wyo. 2000). To establish breach of an insurance contract, the insured must show the existence of a contract, breach and damages. Here, there is no issue as to the first; as to the second and third, the breach and damages are limited to AEIC's refusal to defend.

The Wyoming courts have held the duty of an insurer to defend a claim is broader than the duty of the insurer to indemnify. *Aetna Ins. Co. v. Lythgoe*, 618 P.2d 1057, 1061 (Wyo. 1980) (citing *Lanoue v. Fireman's Fund American Ins. Cos.*, 278 N.W.2d 49 (Minn. 1979); *Boston Ins. Co. v. Maddux Well Serv.*, 459 P.2d 777 (Wyo. 1967)). Analysis of the duty to defend is not made based on the ultimate liability of the insurer to indemnify the insured or on the basis of

whether the underlying action is groundless or unsuccessful. *Lythgoe,* 618 P.2d at 1061 (citing *Employers' Fire Ins. Co. v. Beals,* 240 A.2d 397 (R.I. 1968); *Burger v. Continental Nat'l American Group*, 441 F.2d 1293 (6th Cir. 1971)). Instead, the duty to defend is based on an examination of the facts alleged in the complaint upon which the claim is based. *Lythgoe*, 618 P.2d at 1061 n.2. The analysis of those facts is undertaken in the light of the language of the insurance policy. To determine whether AEIC owed a duty to defend, the Wyoming court will compare the terms of the insurance policy with the allegations set forth in the Oregon complaint.

The discovery sought by Plaintiffs neither involves the production of relevant evidence, nor is it reasonably calculated to lead to evidence which would assist the Wyoming court in interpreting the terms of the AEIC policy or determining whether those terms are rendered ambiguous by the language in that contract. An ambiguous contract "is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present." *Amoco Production Co. v. Stauffer Chemical Co.,* 612 P.2d 463, 464 (1980), citing *Bulis v. Wells*, 565 P.2d 487, 490 (Wyo. 1977). Ambiguity justifying extraneous evidence is not generated by the later disagreement of the parties concerning the meaning of the contract or its terms. *Homestake-Sapin Partners v. United States*, 375 F.2d 507 (10th Cir. 1967). Thus, although extraneous evidence may be admissible to interpret the parties' intent, that evidence is limited to the contemporaneous or later negotiations between the parties. *Polo Ranch Company v. City of Cheyenne*, 969 P.2d 132, 140 (Wyo. 1998) (the court must look to all

1  the surrounding circumstances and extrinsic evidence pertaining to
2  the context within which the contract was formed to determine the
3  parties' intent).

4       Evidence from Mr. Jacot and the Safeco claims file would add
5  nothing to the contractual relationship between AEIC and Plaintiffs
6  with respect to the commercial policy. Differing interpretations of
7  a contract alone will not create an ambiguity requiring the
8  admission of extrinsic evidence. *Moncrief v. Louisiana Land and*
9  *Exploration Company*, 861 P.2d 516, 524 (Wyo. 1993). To the extent
10 extrinsic or parole evidence does not exist to clarify an ambiguity,
11 the ambiguity will be construed against the drafter, the insurance
12 company. *Prudential Preferred Properties v. Underwood Ranch*
13 *Company*, 873 P.2d 598, 600 (Wyo. 1994). Therefore, the evidence
14 sought from Mr. Jacot and/or facts or rationale related to
15 interpretation of Safeco's separately issued homeowner's policy is
16 not relevant to interpretation of the AEIC commercial policy.
17 Finally, the evidence sought would not assist the Wyoming court in
18 determining the nature of the claims alleged in the Oregon lawsuit.

19                          **BAD FAITH CLAIM**

20      Additionally, Plaintiffs have sued AEIC for bad faith. A
21 breach of the implied covenant of good faith and fair dealing gives
22 rise to an independent actionable tort and damage relief. A
23 recovery in tort is premised upon the existence of the special
24 relationship created by the unequal bargaining power between an
25 insurer and the insured. *State Farm Mutual Auto. Ins. Co. v.*
26 *Shrader*, 882 P.2d 813, 825 (Wyo. 1994). The tort imposes an
27 obligation that "neither party will do anything to injure the right
28

of the other to receive the benefits of the agreement." *Shrader*, citing *Gruenberg v. Aetna Ins. Co.,* 510 P.2d 1032 (Cal. 1973). Liability is imposed not for a bad faith breach of contract, but for the failure to comply with the duty of good faith and fair dealing. That duty is not referenced in the terms of the policy; it is an independent obligation imposed by law under which the insurer must act fairly and in good faith in discharging its contractual responsibilities.   As noted earlier, Wyoming case law has established an insurer's duty to defend is broader than its duty to provide coverage. *Shoshone First Bank v. Pacific Employers Insurance Co.*, 2 P.3d 510, 513-14 (Wyo. 2000). If the policy potentially covers one or more claims, the insurer has a duty to defend all claims, and any doubts about coverage should be resolved against the insurer*. Alm v. Hartford Fire Insurance Company*, 369 P.2d 216, 219 (Wyo. 1962).

Additionally, Wyoming has adopted an objective standard of care as a measure of the required conduct of insurers. *Shrader*, at 825, citing *Anderson v. Continental Ins. Co.*, 271 N.W.2d 368 (Wis. 1978). Under this standard, "where a claim was not fairly debatable, refusal to pay would be bad faith and, under appropriate facts, could give rise to an action for tortious refusal to honor the claim." *Id.*  A claim is "fairly debatable" when a reasonable insurer would have denied or delayed payment of the claim for benefits under the facts and circumstances. *Shrader* at 825, citing *McCullough*, 789 P.2d at 860; *Anderson*, 271 N.W.2d at 376. Therefore, to establish a breach of the duty of good faith and fair dealing, the insured must show: (1) the absence of any reasonable basis for

1    denying a claim for benefits; and (2) the insurer's knowledge or

2    reckless disregard of the lack of a reasonable basis for denying the

3    claim for benefits.  *Id.,* citing *Darlow v. Farmers Ins. Exchange*,

4    822 P.2d 820, 824 (Wyo. 1991); *McCullough*, 789 P.2d at 860 (quoting

5    *Anderson*, 271 N.W.2d at 376).

6        The AEIC commercial policy set forth the following provisions:

7        1.   Business Liability

8        a.   We will pay those sums that the insured becomes
     legally obligated to pay as damages because of "bodily
9        injury", "property damage", "personal injury" or
     "advertising injury" to which this insurance applies.  We
10       will have the right and duty to defend the insured against
     any "suit" seeking those damages.  However, we will have
11       no duty to defend the insured against any "suit" seeking
     damages for "bodily injury", "property damage", "personal
12       injury" or "advertising injury" to which this insurance
     does not apply.  We may at our discretion, investigate any
13       "occurrence" and settle any claim or "suit" that may
     result.

14
     ....
15
         b.   This insurance applies:
16
             (1) To "bodily injury" and "property damage" only if:
17
                 (a)  The "bodily injury" or "property
18           damage" is caused by an "occurrence" that takes
     place in the "coverage territory"; and
19
                 (b)  The "bodily injury" or "property
20           damage" occurs during the policy period."

21   The policy defined "occurrence" as "an accident, including

22   continuous or repeated exposure to substantially the same general

23   harmful conditions."  (Ct. Rec. 15, Ex. B at 2.)  AEIC noted the

24   Oregon allegations involved statutory trade secrets violations,

25   specifically that Plaintiffs assisted other defendants to

26   misappropriate assets and approved of that misappropriation, as well

27   as claims of tortious interference and conversion.  The declination

28

letter then concluded, after referring to *Reisig v. Union Insurance Co.*, 870 P.2d 1066 (Wyo. 1994): "it is clear that a claim for civil conversion and/or misappropriation in Wyoming is not an 'accident' such that it would trigger an 'occurrence' pursuant to the policy." (Ct. Rec. 15, Ex. B at 2.)  Additionally, the letter noted certain policy exclusions may apply, including the following:

> 1.   Applicable to Business Liability Coverage - This insurance does not apply to:
>
>   a.   Expected or Intended Injury
>
>   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

In contrast to AEIC's position, Safeco refused to tender a defense on a theory of damages--that the Oregon complaint did not allege property damage as defined under the terms of the policy; alternatively, Mr. Jacot admitted some room for argument "in some jurisdictions" with respect to Safeco's obligation to defend based solely on the theory of liability alleged in the Complaint.  (Ct. Rec. 15, Ex. D at 3.)  However, with respect to coverage in Wyoming, he noted the dispositive case was *Matlock v. Mountain West Farm Bureau*, 44 P.3d 73 (Wyo. 2002) (coverage for damages resulting from intentional tort of conversion did not constitute an "occurrence" to give rise to duty to defend).

AEIC refused coverage on a theory of liability--that the Oregon complaint did not allege an "occurrence" or "accident" as defined under the terms of its policy; rather, the claims alleged intentional acts which (1) did not meet the definition of occurrence

and (2) fell within policy exclusions. Even assuming extrinsic evidence would be relevant with respect to creating an ambiguity as to the definition of "occurrence," there is no showing the evidence would be relevant or reasonably calculated to rebut AEIC's position the claims fell within the policy exclusions. (Ct. Rec. 15, Ex. B at 2.) It follows this court cannot say production of Mr. Jacot or the Safeco claim file would produce relevant evidence of AEIC's alleged unreasonable or reckless decision to deny a defense. However, the ultimate issue of whether AEIC's evidentiary showing is sufficient to support its decision to deny a defense is for the Wyoming court to decide. Accordingly,

1. Third-party Safeco's Motion to Quash **(Ct. Rec. 1)** is **GRANTED**; Safeco's Motion for Protective Order is **DENIED AS MOOT.**

2. The District Court Executive is directed to file this Order and provide a copy to counsel of record.

DATED December 15, 2005.

_____
S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING SAFECO'S MOTION TO QUASH
AND DENYING MOTION FOR PROTECTIVE ORDER - 13